THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ANTONIO NEGRÓN RODRÍGUEZ, Defendant and Appellant.

Nos. 15394–395.   Argued November 6, 1953.—Decided December 30, 1954.

*F. Hernández Vargas* for appellant.   *José Trías Monge, Attorney General* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On December 6, 1950, the Prosecuting Attorney of the former District Court of Puerto Rico, Bayamón Section, filed an information against José Antonio Negrón Rodríguez for the crime of attempted arson in the second degree (§ 50 in relation with §§ 398 and 405 of the Penal Code of Puerto Rico), committed in the following manner: because "the aforesaid accused, José Antonio Negrón Rodríguez, prior to the filing of this information, that is, on or about *the night of October 31 and the dawn of November 1, 1950*, and in Naranjito, Puerto Rico, which is a part of the Bayamón Section of the District Court of Puerto Rico, wilfully, unlawfully, with criminal intent and maliciously, attempted to set fire to the building of the Municipal Hospital of Naranjito, which belongs to the municipality of Naranjito, Puerto Rico, with the intention of destroying that building."

The trial was held on April 11, 1951, and after the Court heard the corresponding testimony it found defendant guilty of the crime of attempted arson in the second degree. Defendant requested that judgment be rendered forthwith and the court sentenced him to serve a term of one to five years' imprisonment in the penitentiary at hard labor. Feeling aggrieved by that judgment defendant appealed to this Court and after the transcript of the evidence was filed, but while defendant's brief was pending, he desisted from said appeal.

On the same December 6, 1950, the Prosecuting Attorney of the former District Court of Puerto Rico, Bayamón Section, filed another information against José Antonio Negrón Rodríguez, Ramón Luis Serrano Torres, Feliciano Pérez Rivera, Alejandro Figueroa Ríos, Inocencio Morales Padilla, Elmer Rivera Nieves, Antonio Nieves Avilés and Eulogio Morales Nieves, for a violation of § 12 of Act No. 67 of May 13, 1934, (Sess. Laws, p. 458), as amended by Act No. 66 of May 9, 1936 (Sess. Laws, p. 342), committed as follows: "the aforesaid defendants . . . prior to the filing

of this complaint, that is, on or about *October 30, 1950, in Giorgetti Street*, within the Municipality of Naranjito, Puerto Rico, which is a part of the Bayamón Section of the District Court of Puerto Rico, unlawfully, wilfully and criminally, had in their possession and inside the station wagon, license No. OP–48828, 18 cartridges of dynamite of the trade mark Gelodyn No. 3, Atlas Explosives, and a home-made bomb containing dynamite with an iron body and a bronze head, with intent to use the same for the purpose of inflicting bodily injury, and to terrify and frighten persons, and to injure and destroy property."

The hearing of this case was held on February 23, 1951, before a court without a jury. After receiving the evidence for the prosecution, defendant having failed to introduce any evidence on his behalf, the court found him guilty and sentenced him to serve 30 months' imprisonment in the District Jail of San Juan, Puerto Rico. Feeling aggrieved by that judgment José Antonio Negrón Rodríguez appealed to this Court, and assigned the following error: the lower court committed serious error of law in finding the accused guilty of an alleged violation of § 12 of the Explosives Act No. 67 of May 13, 1934, as amended, and in sentencing him to serve thirty months' imprisonment in jail.

On the same December 6, 1950, the Prosecuting Attorney of the former District Court of Puerto Rico, Bayamón Section, filed another information against José Antonio Negrón Rodríguez, for another violation of § 12 of Act No. 67 of May 13, 1934, as amended by Act No. 66 of May 9, 1936, committed in the following way: "the aforesaid accused, José Antonio Negrón Rodríguez prior to the date of the filing of this complaint, that is, about *October 31 to November 1, 1950, in the ward Higuillar of Naranjito*, Puerto Rico, which is a part of the Bayamón Section of the District Court of Puerto Rico, unlawfully, wilfully and criminally, and with intent to use the same for the purpose of inflicting bodily

injury and to terrify and frighten persons and to injure
and destroy property, had in his possession several cartridges
of dynamite (explosives)."

The trial was held on the same February 23, 1951, before
a court without a jury. After receiving the evidence for
the prosecution, the defendant having failed to introduce any
evidence on his behalf, the court found him guilty and sen-
tenced him to serve five years' imprisonment in jail. Feel-
ing aggrieved by said judgment, José Antonio Negrón Rodrí-
guez appealed to this Court, and upon both cases referring
to the possession of dynamite for unlawful purposes being
consolidated, he assigned for both causes the same single
error to which we have previously referred.

The principal reason set forth by appellant's attorney in
his brief, is the following: "that although the prosecuting
attorney may file informations or separate complaints for
each fact or series of facts which establish by themselves
the violation of a statute, he can not do so when that fact
or series of facts are within a major offense as essence or
substance thereof or as its controlling element," and the
district attorney has proceeded to prosecute for the major
offense. In other words, since José Antonio Negrón Rodrí-
guez was prosecuted and sentenced for the crime of attempted
arson in the second degree, to serve a term of from one to
five years' imprisonment in the penitentiary, he can not be
prosecuted and sentenced to serve a term of thirty months'
imprisonment in jail for the offense of possessing dynamite
with the intention of inflicting bodily injury or of destroying
material property.

■■ The statute involved in this case is § 50 of the
Penal Code of Puerto Rico, which provides: "Every person
who attempts to commit any crime but fails, or is prevented
or intercepted in the perpetration thereof, is punishable,
where no provision is made by law for the punishment of
such attempts, as follows: (1) If the offense so attempted

is punishable by imprisonment in the penitentiary for five years, or more, or by imprisonment in jail, the person guilty of such attempt is punishable by imprisonment in the penitentiary, or in jail, as the case may be, for a term not exceeding one-half the longest term of imprisonment prescribed upon a conviction of the offense so attempted . . ."; § 398 of the Penal Code of Puerto Rico which provides: "Arson is the wilful and malicious burning of a building of another with intent to destroy it"; § 405 of the Penal Code of Puerto Rico, which provides: "Maliciously burning in the nighttime an inhabited building in which there is at the time some human being, is arson in the first degree"; all other kinds of arson are of the second degree; § 12 of Act No. 67 of May 13, 1934, as amended by Act No. 66 of May 9, 1936, and by Act No. 13 of January 9, 1951 (Sess. Laws, p. 392) which in its original version—the one applicable to this case, provided: "Any person who shall have in his possession dynamite or other explosive chemical or substance, with intent to use the same for the purpose of inflicting bodily injury on, or to terrify and frighten any person, or to injure or destroy any property, or to damage the same in any manner, shall be liable, (and) on conviction, to pay a fine of not less than one hundred fifty (150) nor more than three thousand (3,000) dollars or to imprisonment at hard labor for a term of not less than six (6) months and not to exceed five (5) years."

We have carefully examined the transcript of the evidence, both in the appeal abandoned by the defendant, which refers to the sentence for attempted arson in the second degree, as well as in the joint appeal which refers to the two sentences for violation of § 12 of Act No. 67 of May 13, 1934, as amended, and both are sufficient in law to support the three sentences imposed on the accused. As to the attempted arson in the second degree, committed some time between October 31, 1950 and November 1, 1950, the same

is totally independent from the offense of possessing dynamite for unlawful means committed by the accused on October 30, 1950. As a matter of fact, in the offense charged as committed on October 30, 1950, the police took possession of the small suitcase where the accused carried the dynamite to town, and therefore he was not able to use it to set the Municipal Hospital of Naranjito on fire. Now, there is another case, consolidated with the former for the purposes of this appeal, where the accused was charged with having been in possession of certain quantities of dynamite on October 31, 1950, and the evidence introduced by the prosecuting attorney, Víctor M. Sánchez Fernández, showed that in this second case the dynamite was used in attempting to set fire to the building of the Municipal Hospital of Naranjito.

It is with regard to this second case of violation of § 12 of Act No. 67 of May 13, 1934, committed between the night of October 31 and the morning of November 1, 1950, that we may consider whether the offense of possessing dynamite for unlawful means was merged within the major offense of attempted arson in the second degree. The first fact we must establish is whether the minor offense, in this case the violation of § 12 of Act No. 67 of May 13, 1934, is necessarily an ingredient, that is, if it is by its nature indivisible from the major offense, in this case, the attempted arson in the second degree.

A minor offense by its nature can be included within a major one when the sole difference existing between one and the other is the aggravation determined by law, that is, the first offense is an ingredient of the other which is supposed to include it. The commentator Francis Wharton, 1 *Wharton's Criminal Law* 50, Co-operative Publishing Company of 1932, takes as example the different phases of battery which run from assault to murder, in order to show the development of the process of aggravation: "Questions frequently

arise whether a particular offense is divisible; in other words, whether it is susceptible of being divided into two or more offenses, each to be open to a separate prosecution. The first line of cases of this class we have to notice is where one offense is an ingredient in another, an assault in assault and battery, manslaughter in murder, and larceny in burglary. Several of such concentric layers may successively exist. Thus, we may take the case of an assault, enveloped by a battery, and this by manslaughter, and this by murder. Add the blow to the assault and it becomes assault and battery. Add a killing to the assault and battery, and it becomes manslaughter. Add malice aforethought to manslaughter, and it becomes murder. Or, to take the converse, strip from murder the malice aforethought, and it becomes manslaughter. Strip from manslaughter the death of the party assaulted, and the offense becomes assault and battery. Negative the battery, and the case is one of assault. Now this rejecting of successive aggravations is a function open to juries in all cases where there is presented to them one offense in which another is inclosed."

As may be noted, in order to produce a merger of a minor offense within a major offense, both must be centered around a fact pertaining to a common offense susceptible of being aggravated or lessened according to the concurrence of particular circumstances. If it is a question of different facts pertaining to an offense which can exist independently of the common fact, then we are facing an offense which is susceptible of being divided into two or more offenses.

■ It is not difficult to conclude that the possession of dynamite for unlawful purposes is not included by its intrinsic nature in the crime of arson. Each one may be produced independently of the other. Neither one constitutes an aggravation or a necessary ingredient of the other. As a matter of fact the dynamite in this case is nothing more than an instrument for the commission of a crime, the same

as a revolver is an instrument of a murder committed with a firearm. If the statute had created a specific aspect of fires perpetrated with dynamite, perhaps we would be facing a different problem. But the degrees of aggravation in arson are measured either by the habitability of the burned structure or by the hour of its commission, and not by the instruments used in producing the fire. Since the offenses are entirely different, and there are different penalties to punish their commission, the State may file an independent and separate information for the offense of possessing dynamite for unlawful purposes as well as for arson.

██ Although what is expressly alleged is the existence of a merger of a minor offense within a major offense, defendant's attorney tries to convince us, in the course of his arguments, that we are dealing with a continuing offense. Construing Act No. 53 of June 10, 1948 (Spec. Sess. Laws, p. 170) we define the continuing offense as "a transaction or a series of acts set on foot by a single impulse and operated by an uninterrupted force no matter how long a time it may take." *People* v. *Burgos*, 75 P.R.R. 517, 533, 534, (Pérez Pimentel) (1953) where it is held that in cases of continuing offenses, what is punished is the course of conduct and not the specific acts committed in obedience to that course of conduct. What the State attempted in the case of Burgos was to punish separately the same act committed by the same person on different dates, for the purpose of organizing a group of persons and participating in an assembly as part of a separatist movement, intending to achieve the separation of Puerto Rico from the United States by force and violence, culminating in a rebellion against the established government. Since it dealt with an offense of preaching, it is unquestionable that each and every one of the actions of the accused had to be analyzed in order to see whether all or a part of them was included within the practice proscribed by the law; see also *People* v. *Reynolds*, *ante*, p. 421.

But we are not dealing here with the potential offense of revolutionary practice, which needs the common intention of successive separate events or the concatenation of a series of potential facts committed at different times and pertaining to the offense but with a consummated offense sufficient in itself to constitute a public offense. In this case the character of continuity must be established in a different way. When the inculpatory facts rapidly succeed each other, in the same place, following the theory of the single impulse, or more exactly, of the single criminal intention, only one information may be filed for all the offenses committed in a single impulse or within the single criminal intention. It would be necessary likewise that all the offenses committed within the single impulse could be established by the same evidence: *People* v. *Peña*, 73 P.R.R. 250, 253 (Marrero). But if the inculpatory facts succeed each other with sufficient time for specific thought between them to produce a different criminal intention, there can be a new information for each one. Wharton's *Criminal Pleading and Practice* 346 (9th edition of Kay and Brother of 1889). In this case the evidence is clear that each one of the facts pertaining to the offense was planned within a reasonable margin of time so we may infer a different criminal intention within the theory of a single impulse.

The judgment appealed from will be affirmed.

Mr. Justice Sifre concurs in the result.